**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| FELIPE DE PAULA ATAIDE ALMEIDA,<br><br>Petitioner,<br><br>v.<br><br>ANTONE MONIZ, et al.<br><br>Respondents. | Civil Action No. 1:26-CV-12207-AK |

**MEMORANDUM AND ORDER ON PETITIONER'S EMERGENCY MOTION TO ENFORCE JUDGMENT AND FOR IMMEDIATE RELEASE**

**ANGEL KELLEY, D.J.**

Petitioner Felipe De Paula Ataide Almeida ("Ataide Almeida" or "Petitioner") has filed the instant Emergency Motion to Enforce Judgment and for Immediate Release ("Motion") [Dkt. 21], seeking to enforce the judgment entered by this Court granting his habeas petition and ordering a bond hearing pursuant to 8 U.S.C. § 1226(a) [Dkt. 12]. Respondents oppose the Motion arguing, *inter alia*, that Petitioner was provided with a constitutionally sufficient bond hearing and that he has failed to exhaust administrative remedies. [Dkt. 23]. For the following reasons, Petitioner's Motion is **GRANTED**.

## I. BACKGROUND

Petitioner is a Connecticut resident and citizen of Brazil who entered the United States without inspection in 2021. [Dkt. 1 ¶¶ 19-22]. On or about August 21, 2023, a Brazilian court issued a charging document against Petitioner for drug trafficking and related offenses, followed by an arrest warrant on December 13, 2023. [See Dkt. 10-2]. The arrest warrant and charging document were predicated on a 2018 incident during which Petitioner was observed dealing

approximately twelve grams of marijuana. [See Dkt. 10-4 at 2]. U.S. Immigration and Customs Enforcement ("ICE") subsequently obtained an INTERPOL Red Notice describing this offense. [See id.]. On or about May 7, 2026, ICE arrested and detained Petitioner in Massachusetts. [See Dkt. 1 ¶ 21].

On June 4, 2026, the Court granted Ataide Almeida's Petition for Writ of Habeas Corpus in this matter. [Dkt. 12]. Pursuant to the Court's Order, Petitioner had a bond hearing on June 11, 2026, and was denied bond after the Immigration Judge ("IJ") found that he presented a danger to the community by clear and convincing evidence. [See Dkt. 14]. At the bond hearing, the IJ relied on the existence of the Red Notice for Petitioner in making her decision. [See Dkt. 16].

On June 17, 2026, the Brazilian court issued a *contramandado* (i.e., an order revoking the arrest warrant), which stated that preventive detention was no longer necessary or proportional, and the Red Notice was subsequently deactivated. [See Dkt. 16, Ex. B]. On July 2, 2026, Petitioner filed a Status Report and Request for Further Relief, asking the Court to retain jurisdiction in light of materially changed circumstances after his bond hearing and citing the *contramandado*. [Dkt. 16]. Petitioner contended that this revocation affected the factual predicate supporting the IJ's bond denial and requested a new bond hearing based on this material change in circumstances. [Id.]. On July 21, 2026, after briefing from the parties, this Court denied Petitioner's request for further relief, finding that Petitioner should seek a new bond hearing before the Immigration Court pursuant to 8 C.F.R. § 1003.19(e). [Dkt. 20].

On August 10, 2026, the Immigration Court conducted a hearing, ultimately denying Petitioner's request and finding no changed circumstances because while the arrest warrant had been revoked and the INTERPOL Red Notice had been deactivated, there was insufficient

evidence in the language of the *contramandado* or otherwise to suggest that the alleged underlying charges were dismissed. [Dkt. 21 at Ex. 9]. The IJ issued an oral decision and a single-sentence, pre-printed written order denying a new bond hearing and finding that Petitioner failed to meet his burden under 8 C.F.R. § 1003.19(e). [Id. at Ex. 7]. Petitioner reserved his right to appeal the decision to the Board of Immigration Appeals ("BIA"). [Id.].

On August 12, 2026, Petitioner filed the instant Motion, claiming his original June 11, 2026, bond hearing was constitutionally deficient, and that his August 10, 2026, bond redetermination denial was improper because, *inter alia*, the IJ failed to adequately account for the *contramandado*. [Dkt. 21].

## II. DISCUSSION

### A. Subject Matter Jurisdiction Under 8 U.S.C. § 1226(e)

Respondents first argue that the Court lacks jurisdiction to review either the initial bond denial or the changed-circumstances denial because Petitioner, in substance, asks the Court to reweigh the evidence.[1] It is true that Congress has sharply constrained judicial review of immigration custody decisions. 8 U.S.C. § 1226(e) provides that the Attorney General's "discretionary judgment regarding the application of this section shall not be subject to review." 8 U.S.C. § 1226(e). This Court, therefore, may not reweigh evidence in the first instance. Diaz Ortiz v. Smith, 384 F. Supp. 3d 140, 143 (D. Mass. 2019); Pensamiento v. McDonald, 315 F.

---

[1] In a subsequent filing, Petitioner notes that he had a removal hearing on September 10, 2026. [Dkt. 26]. The parties have not filed subsequent status reports or otherwise notified the Court of the outcome of the removal hearing and, thus, whether Petitioner was ordered removed. In any event, an IJ's order of removal "becomes final when the BIA affirms it or when the time to appeal it expires, whichever is earlier." Lopez-Portillo v. U.S. Att'y Gen., No. 20-13389, 2021 WL 3161811, at *2 (11th Cir. July 27, 2021) (citing 8 U.S.C. § 1101(a)(47)(B)). Absent any notice from the parties, the Court assumes that Petitioner is not yet subject to a final order of removal and thus, 8 U.S.C. § 1226(a) continues to govern Petitioner's detention rather than 8 U.S.C. § 1231.

Supp. 3d 684, 688 (D. Mass. 2018).

Here, however, Petitioner challenges the legality and constitutionality of the bond hearing and the denial of his bond redetermination. Section 1226(e) does not bar "habeas jurisdiction over constitutional claims or questions of law." Hernandez v. Sessions, 872 F.3d 976, 987 (9th Cir. 2017) (quoting Leonardo v. Crawford, 646 F.3d 1157, 1160 (9th Cir. 2011)). Under Section 1226(e), "district courts have jurisdiction to review [an] Immigration Judge's discretionary bond denial . . . 'where that bond denial is challenged as legally erroneous or unconstitutional.'" Mayancela Mayancela v. FCI Berlin, No. 25-CV-348, 2025 WL 3215638, at *4 (D.N.H. Nov. 18, 2025) (quoting Diaz-Calderon v. Barr, 535 F. Supp. 3d 669, 676 (E.D. Mich. 2020)). Indeed, multiple other sessions of this court have entertained motions to enforce where the bond hearing provided was constitutionally deficient. See, e.g., Martinez Aguilar v. McDonald, No. 25-CV-13638, Dkt. 17 (D. Mass. June 5, 2026); Rogerio Ramos v. Moniz, No. 26-CV-11388, Dkt. 19 (D. Mass. Apr. 27, 2026); Mijango Velasco v. Wesling, No. 26-CV-11355, Dkt. 19 (D. Mass. Apr. 24, 2026); Palma Aguirre v. Moniz, No. 26-CV-11927, Dkt. 16 (D. Mass. May 21, 2026); Miti v. Moniz, 827 F. Supp. 3d 206, 211 (D. Mass. 2026) ("District courts retain habeas jurisdiction to ensure that immigration bond hearings are conducted within constitutional bounds."); Dos Reis v. Vitello, No. 25-CV-10497, 2025 WL 1043434, at *2 (D. Mass. Apr. 8, 2025) ("[A] court may intervene where an immigration bail determination is *ultra vires* or facially unconstitutional"); Massingue v. Streeter, 19-CV-30159, 2020 WL 1866255, at *4 (D. Mass. Apr. 14, 2020) (holding that district courts may assess whether an IJ's bond hearing complied with constitutionally mandated standards). The same has applied for reviews of "material change in circumstances" denials. See, e.g., Soto Gimenez v. Hernandez, No. 26-CV-00966, 2026 WL 1156075, at *8 (W.D. Wash. Apr. 29, 2026); Arikan v. Warden, No. 26-CV-

03748, 2026 WL 2621036, at *9 (E.D. Cal. Sep. 4, 2026); Marroquin Ambriz v. Barr, 420 F. Supp. 3d 953, 961 (N.D. Cal. 2019); Lopez Reyes v. Bonnar, 362 F. Supp. 3d 762, 772-73 (N.D. Cal. 2019).

Accordingly, the Court maintains jurisdiction to assess whether the IJ failed to afford constitutionally and legally adequate hearings to Petitioner.

**B. Administrative Exhaustion**

Respondents next contend that Petitioner must exhaust administrative remedies with the BIA before seeking review of his constitutional due process claims. However, as this Court explained in Reyes Vargas v. Warden, No. 26-CV-11740, 2026 WL 1453510 (D. Mass. May 22, 2026), when Petitioner's liberty interests are at stake, and his detention under 8 U.S.C. § 1226(a) is discretionary and of no fixed duration, administrative exhaustion through appeal to the BIA is not required. Id. at *4-5. Thus, this Court has subject matter jurisdiction to review Petitioner's Motion to Enforce.

**C. Sufficiency of Bond Hearing**

Petitioner challenges the constitutionality of both his June 11, 2026, bond denial as well as his August 10, 2026, denial of a bond redetermination pursuant to materially changed circumstances under 8 C.F.R. § 1003.19(e). The Court has reviewed the parties' briefing and evidence concerning Petitioner's bond hearing and redetermination hearing [Dkt. 21, Exs. 1-9], as well as the audio recordings from his June 11, July 20, and August 10, 2026, hearings in the Immigration Court [Dkts. 22; 25].

The Court first reviews Petitioner's arguments regarding his June 11, 2026, bond hearing. The applicable standard is whether the IJ correctly applied the standards set forth in the First Circuit and the burdens of proof as required by the Constitution's guarantee of due process. See

Hernandez-Lara v. Lyons, 10 F.4th 19 (1st Cir. 2021) (holding due process required government to bear burden of proving danger or flight risk). Specifically, Matter of Guerra, 24 I. & N. Dec. 37, 40 (BIA 2006), provides the applicable factors that an IJ may consider in determining whether a noncitizen poses a risk of flight or dangerousness for the purposes of a custody determination. While an IJ has "broad discretion in deciding the factors," an IJ "may" consider "any or all of the following":

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

Id. at 40.

At Petitioner's June 11, 2026, bond hearing, the IJ relied upon Petitioner's criminal history to find him a danger to the community. IJ's may consider evidence of criminal activity, even if the conduct did not result in a criminal conviction. See, e.g, Rubio-Suarez v. Hodgson, No. 20-CV-10491, 2020 WL 1905326, at *3 (D. Mass. Apr. 17, 2020). Petitioner's criminal history included two incident reports with police in Connecticut, including: (1) a September 2, 2025, encounter with Bridgeport Police for failure to obey a stop sign, operating a motor vehicle without a license, theft of plates/inserts, and illegal operation of a motor vehicle without the minimum insurance; and (2) a March 20, 2026, arrest by Bridgeport Police for failing to respond to a violation. [Dkt. 21, Ex. 2]. Petitioner also had an INTERPOL Red Notice due to an open arrest warrant in Brazil for a controlled-substance violation. [Id.]. The Red Notice concerned an October 9, 2018, incident in which military police allegedly observed Petitioner hand

approximately twelve grams of marijuana to another person; the warrant and Red Notice, however, were not issued until five years after the incident, in 2023. [Id.].

At the hearing, the IJ found that the Department had met its burden and that Petitioner is a danger to the community. [Dkt. 21, Ex. 1]. As the sole basis for her decision, the IJ stated that she "is seriously concerned about [the INTERPOL Red Notice]," that Petitioner "is wanted in Brazil for drug trafficking," that "this is a serious offense, even here in the United States," and that "there's no evidence that has been filed to combat the dangerousness . . . in this INTERPOL Red Notice." [Dkt. 21, Ex. 9 at 180]. The IJ did not address whether there were any alternatives to detention at the hearing. [See id.].

On review, this Court finds that while the IJ articulated the correct standard of proof, the IJ did not properly apply the Guerra factors to assess whether Petitioner posed a danger to the community. Neither the written order nor the IJ's oral rulings, as reflected in the hearing audio recording transcript, reference the Guerra factors. Nor do they address the substantial volume of evidence provided by Petitioner related to his family, his two-year-old daughter with a developmental disability, his steady employment, his pending asylum application, his sponsor, significant community support, and record of consistent court appearances. See Garcia v. Hyde, No. 25-CV-585, 2025 WL 3466312, at *1 (D.R.I. Dec. 3, 2025) (highlighting that IJ's "may not simply ignore substantial testimonial and documentary proof"). Resting a denial on a single fact while failing to make any mention of Petitioner's substantial evidence falls short of what due process requires. See Gamitto de Souza, No. 26-CV-12059, Dkt. 14 (D. Mass. July 27, 2026) (IJ failed to grapple with or acknowledge in any way the body of evidence relevant to the bond determination presented by petitioner, including community ties).

Moreover, the single piece of evidence the IJ *did* rely on—the 2023 Red Notice—fails as

a matter of law to support a clear-and-convincing finding of dangerousness. Matter of Guerra requires an assessment of the age and seriousness of an arrest in evaluating current risk of danger. See Lopez Reyes, 362 F. Supp. 3d at 774 ("'[T]he recency and severity of the offenses must be considered' when determining dangerousness." (quoting Singh v. Holder, 638 F.3d 1196, 1206 (9th Cir. 2011))). The Red Notice describes an event from when Petitioner was a nineteen-year-old student eight years ago, and involves a single, nonviolent, street-level drug transaction with no subsequent conviction. The IJ did not mention or grapple with any of these countervailing considerations in assessing the probative value of the Red Notice. Indeed, this Court and others have found constitutionally insufficient bond denials based on similar or more serious charges.[2] E.g., Cesvette v. Moniz, 26-CV-12662, Dkt. 22 (Aug. 25, 2026) (ordering immediate release where IJ denied bond because petitioner had a one-year-old, dismissed charge for assault); Correia de Pina v. Moniz, 26-CV-12262, Dkt. 17 (Sep. 2, 2026) (ordering immediate release where IJ denied bond because petitioner had a recent pending DUI arrest). The Court thus finds that the evidence in the record before the IJ could not, as a matter of law, have supported the IJ's decision.

In addition to the insufficient evidence supporting the IJ's finding, the bond denial was also independently deficient for failure to consider alternatives. In Section 1226(a) bond proceedings, due process requires consideration of less restrictive alternatives—such as conditions of release or electronic monitoring—that could mitigate any danger or flight risk. See Costa v. McDonald, No. 25-CV-13469, 2026 WL 371198 at *2-3 (D. Mass. Feb. 10, 2026)

---

[2] Even if there may be distinct considerations for international arrest warrants or law enforcement notices, as opposed to domestic state charges, the IJ did not explain or address these considerations and how they may relate to a finding of dangerousness in her order or during oral argument.

("[B]y failing to address less restrictive alternatives to detention, the Government failed to provide Petitioner with constitutionally sufficient procedure."); Vieira v. Moniz, No. 19-CV-12577, 2020 WL 488552, at *4 (D. Mass. Jan. 30, 2020) ("In light of the heavy burden on the government to prove dangerousness by clear and convincing evidence, and the immigration court's failure to consider alternative conditions of release, Petitioner has adequately demonstrated prejudice."). The record before the Court suggests the IJ failed to evaluate whether alternatives to detention or other less restrictive means could address any danger Petitioner might pose. The IJ does not explain how the charges relate to dangerousness to the community, much less whether alternatives to detention would ameliorate any such danger Petitioner may pose. This lack of consideration renders the hearing and bond denial deficient. Indeed, other sessions of this Court have at least twice held that an IJ's "silence as to alternatives render[s] the bond hearing constitutionally deficient," and have ordered release on that basis. Mijango Velasco v. Wesling, No. 26-CV-11355, Dkt. 19 at 5-6; Rogerio Ramos, No. 26-CV-11388, Dkt. 19 at 4-5. Reciting the conclusion that no alternative exists, on a check-box form, without engaging in analyzing any alternative, does not satisfy that requirement. Accordingly, the Court finds the bond hearing constitutionally deficient.

Because the Court finds that Petitioner is entitled to relief based on the constitutional deficiency of his June 11, 2026, bond hearing, the Court need not reach Petitioner's arguments regarding the IJ's denial of a bond redetermination based on materially changed circumstances under 8 C.F.R. § 1003.19(e).

Having concluded that Petitioner was not afforded a constitutionally adequate bond hearing, the Court turns to remedy. "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure

release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). Federal courts retain wide discretion in fashioning that relief. See United States v. Torres-Otero, 232 F.3d 24, 30 (1st Cir. 2000) (in the Section 2255 context, the "remedy is broad and flexible, and entrusts to the courts the power to fashion an appropriate remedy"); Burnett v. Lampert, 432 F.3d 996, 999 (9th Cir. 2005) ("Federal courts have a fair amount of flexibility in fashioning specific habeas relief.").

Here, Respondents have failed to comply with the Court's Order to provide Petitioner with a constitutionally sufficient bond hearing. Upon careful consideration of the record, the Court concludes that the proper remedy is to release Petitioner immediately.

## III. CONCLUSION

For the foregoing reasons, Ataide Almeida's Motion to Enforce [Dkt. 21] is **GRANTED**. Respondents are **ORDERED** to release Petitioner immediately.

**SO ORDERED.**

Dated: September 18, 2026

/s/ Angel Kelley
Hon. Angel Kelley
United States District Judge